**SOUTHERN SERVICES, INC., and the Coca–Cola Company, Petitioners, Cross–Respondents,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross–Petitioner,**

Service Employees International Union, Local 679, Intervenor.

No. 91–8156.

United States Court of Appeals, Eleventh Circuit.

Feb. 28, 1992.

Edward Katze, Townsell G. Marshall, Jr. Constangy, Brooks & Smith, Kimberly A. Weber, Joseph H. McLure, Jr., Stowers, Hayes, Clark & Roane, William J. Bernstein, W. Thomas Haynes, The Coco–Cola Company, Atlanta, Ga., for petitioners, cross-respondents.

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

Howard E. Perlstein, N.L.R.B., Aileen A. Armstrong, Washington, D.C., for respondent cross-petitioner.

Larry Engelstein, Service Employees Intern. Union, Legal Dept., Washington, D.C., for intervenor.

Before COX, Circuit Judge, JOHNSON * and REAVLEY **, Senior Circuit Judges.

REAVLEY, Senior Circuit Judge:

The Coca–Cola Company (Coca–Cola) and its janitorial subcontractor, Southern Services, Inc. (SSI), appeal an order of the National Labor Relations Board (NLRB) that prohibits Coca–Cola and SSI from restricting the rights of SSI employees to distribute union literature to other SSI employees on Coca–Cola's property in nonworking areas during nonworking hours. We concur with the NLRB's analysis and sustain the enforcement of its order because Coca–Cola's plant is the exclusive workplace of the SSI subcontract employees and they intend to distribute union literature only to other SSI employees.

## I. BACKGROUND

Coca–Cola owns and operates a secured industrial complex in Atlanta, Georgia (the Complex). Coca–Cola retains outside contractors and subcontractors, including SSI, to perform a variety of services at the Complex. The Complex is the only common workplace of the approximately 165 SSI employees who provide janitorial services to Coca–Cola under subcontract. Service Employees International Union No. 679 (SEIU) has tried since 1987 to recruit SSI employees, including those working at the Coca–Cola Complex. SEIU distributed union literature to SSI employees in the driveway and on the sidewalk outside of the secured entrance through which SSI employees regularly entered the Complex. Coca–Cola has not objected to that distribu-

** Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

tion, although it has occurred partly on Coca–Cola property.

But on April 14, 1989, Patricia Copeland, an SSI janitor, took SEIU leaflets past the security gate and into the Complex when she entered to begin her scheduled work shift. Coca–Cola's security guard saw the leaflets and, in accordance with Coca–Cola's rule prohibiting distribution by non-employees,[1] told Copeland that she could not distribute SEIU literature on Coca–Cola property. Copeland nevertheless distributed literature to other SSI employees until an SSI supervisor told her to stop because she was violating Coca–Cola's no-distribution policy. SEIU charges that Copeland enjoyed the status of a Coca–Cola employee for the purpose of distribution rights, and therefore Coca–Cola and SSI violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by prohibiting her distribution of SEIU literature on Coca–Cola's parking lot during non-working time. Section 8(a)(1) makes it an unfair labor practice "for an employer ... to interfere with, restrain, or coerce employees" in the exercise of their organizing rights under section 7 of the Act, 29 U.S.C. § 157. Coca–Cola and SSI counter that Copeland's status was analogous to that of a nonemployee union organizer under section 7, and therefore Coca–Cola was entitled to treat her as a stranger or trespasser for the purpose of its nonemployee no-distribution rule.

SEIU's charge initially was heard by an Administrative Law Judge (ALJ), who recognized that the legal framework for determining an employer's right to curtail distribution activity, protected under section 7, differs depending on whether an employee or a nonemployee undertakes the activity.

The ALJ observed that under *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), and its progeny, Coca–Cola's no-distribution rule would be invalid if applied to Coca–Cola employees engaging in distribution during non-work time and in non-work areas, unless proved necessary to maintain production or discipline.[2] As a Coca–Cola regular employee, Copeland would enjoy the benefit of *Republic Aviation*, and her off-hours distribution of SSI literature in the Coca–Cola parking lot would be protected. 65 S.Ct. at 987–88. But a different rule, announced in *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), and applied in Jean Country v. Local 305, Retail & Wholesale Employees Union, 291 N.L.R.B. No. 4 (September 27, 1988), would apply if Copeland occupied the status of a nonemployee union organizer. Babcock & Wilcox allows an employer to prohibit nonemployee organizers from distributing union literature on company property so long as the prohibition does not discriminate against the union and the union has reasonable alternative means to communicate its message to the employees. 76 S.Ct. at 684–85.

The ALJ regarded Copeland as a business invitee on Coca–Cola's property, and not a Coca–Cola employee, for section 7 purposes. The ALJ implicitly considered Copeland's relationship to Coca–Cola as analogous to that of a nonemployee union organizer with respect to her distribution activity.[3] The ALJ thus applied *Babcock & Wilcox*, stating that "where persons other than employees of an employer that owns or controls the property in question are concerned, 'alternative means' must always be considered...." *See Babcock & Wil-*

1. Coca–Cola's policy provides that

   [p]ersons who are not employees of the Company are not permitted on Company property either to solicit employees or to distribute material to Company employees at any time, and will be refused access for any such purpose.

2. Coca–Cola and SSI do not contend that Coca–Cola could legitimately apply its no-distribution rule to Coca–Cola employees, or that off-hours distribution among Coca–Cola employees in

non-work areas interferes with Coca–Cola's management interest in production or discipline.

3. The ALJ relied principally on *Jean Country* which, like *Babcock & Wilcox* and *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976), dealt with distribution carried out by a trespasser or stranger to the premises, who also was not an employee of the employer seeking to restrict the distribution. The ALJ correctly noted that *Jean Country* considered the distributing person's nonemployee status.

*cox,* 76 S.Ct. at 684 (no-distributing rule valid only if "other available channels of communication" reasonably enable union to reach employees). The ALJ found that SEIU had failed to show that reasonable alternative means are unavailable, especially in light of Coca–Cola's practice of permitting distribution on its property in the driveway area outside the guard gate. The ALJ therefore dismissed SEIU's complaint.

NLRB, in considering SEIU's exceptions to the ALJ's decision, noted that Copeland, though an SSI employee, worked regularly and exclusively on Coca–Cola's premises at Coca–Cola's invitation. On the day she allegedly violated Coca–Cola policy, she was reporting to work pursuant to her employment relationship. So, unlike a nonemployee union organizer, Copeland was not a "stranger" or "trespasser" on Coca–Cola property. NLRB found Copeland's status analogous to that of a Coca–Cola employee with respect to her section 7 rights, and rejected the ALJ's analysis. Accordingly, NLRB applied the standard of *Republic Aviation* and found that neither Coca–Cola nor SSI had demonstrated that prohibiting Copeland's distribution to other SSI employees in nonworking areas on nonworking time was necessary to maintain production and discipline.[4] NLRB concluded, therefore, that Coca–Cola and SSI had violated section 8(a)(1).

## II. DISCUSSION

We review NLRB's order to determine whether NLRB's construction of the Act is reasonable, i.e. not contrary to law. *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). Where, as here, the material facts are not disputed, we must sustain the NLRB's analysis "unless its conclusions rest on erroneous legal foundations." *Babcock & Wilcox,* 76 S.Ct. at 684.

We recognize that employees' section 7 rights differ from the rights of non-employee union organizers. Consequently, the considerations relevant to accommodating employer rights and organizing rights also differ. *Eastex, Inc. v. NLRB,* 437 U.S. 556, 570–73, 98 S.Ct. 2505, 2515–16, 57 L.Ed.2d 428 (1978); *Babcock & Wilcox,* 76 S.Ct. at 683–84. The distinction between these groups emerged in *Babcock & Wilcox* because of an employer's efforts to restrict distribution by union organizers who had no right to enter the employer's premises for any purpose, including distribution of union literature or oral solicitation. The Court reasoned from the need to balance section 7 rights with employers' *property* rights, but held that employers could validly impose no-distribution rules against *nonemployees* if union communication channels were not effectively stifled. 76 S.Ct. at 683–84. So *Babcock & Wilcox* suggests two different routes for analyzing employer rights, which now diverge under this case's facts. *Babcock & Wilcox* implied that employers may restrict distribution by nonemployee organizers for the reason that those organizers are *trespassers.* 76 S.Ct. at 683. Yet the holding addressed the section 7 rights of *nonemployees*—a category of persons who are not necessarily trespassers on the employer's premises. 76 S.Ct. at 684. But dicta in the Supreme Court's post-*Babcock & Wilcox* cases indicate that it is the organizer's status as a trespasser or stranger to the employee's property, rather than the nonemployee status, that invokes the employer's property right to restrict premises distribution by the organizer.

In *Eastex,* the Court explained the distinction between *Republic Aviation* and *Babcock & Wilcox* with respect to the balancing of employers' rights and organizational rights by pointing out that "[t]he difference was that the nonemployees in

---

**4.** Coca–Cola contends here that the SSI employees' distributing activity on Coca–Cola's parking lot will compromise plant safety and cause littering and confusion. However, Coca–Cola couches its complaints in terms of the interference with its property interests, under the *Babcock & Wilcox* analysis, and not in terms of its

management interests in employee production and discipline. Further, it appears that Coca–Cola did not object to NLRB's factual findings. Indeed, both Coca–Cola and SSI concede on appeal that the issues to be resolved are purely legal.

*Babcock & Wilcox* sought to *trespass on the employer's property,* whereas the employees in *Republic Aviation* did not." 98 S.Ct. at 2515 (emphasis added). And in *Hudgens,* the Court distinguished the same two cases by explaining that "[a] wholly different balance was struck when the organizational activity was carried on by employees already *rightfully on the employer's property,* since the employer's management interests rather than his property interests were there involved." *Hudgens,* 96 S.Ct. at 1037, n. 10 (emphasis added). *See also Jean Country, supra* (formulating employer's property interest as a "right to protect his property against intrusions by those whom he has not invited to enter").[5]

Also, the Court's post-*Babcock & Wilcox* cases support the Act's purpose of protecting *workplace* organizing activity. The right of employees "to self-organize and bargain collectively established by § 7 ... *necessarily* encompasses the right effectively to communicate with one another regarding self-organization *at the jobsite*." *Beth Israel Hospital v. NLRB,* 437 U.S. 483, 491, 98 S.Ct. 2463, 2469, 57 L.Ed.2d 370 (1978) (emphasis added) (footnote omitted). And the workplace "is a particularly appropriate place for the distribution of § 7 material, because it 'is the one place where [employees] clearly share common interests and where they traditionally seek to persuade fellow workers in matters affecting their union organizational life....'" *Eastex,* 98 S.Ct. at 2517 (quoting *Gale Products,* 142 NLRB 1246, 1249 (1963)). In this case, Coca–Cola's Complex was Copeland's

exclusive workplace, and provided the only practical site where Copeland and other SSI employees assigned to the same subcontract could distribute union literature and discuss union organization among themselves.

The modern practice of subcontracting for services does not automatically curtail section 7 rights. Nor does the conduct of distributing union literature transform the status of a subcontract employee such as Copeland from that of a business invitee to that of a mere trespasser. Coca–Cola and SSI urge this theory, but suggest no principled barrier against the argument that a similar transformation occurs when the regular employee of an employer such as Coca–Cola engages in distribution activity.[6] Coca–Cola and SSI fail to explain why that would not be the case, or to cite law establishing the missing principle.

When the relationship situates the subcontract employee's workplace continuously and exclusively upon the contracting employer's premises, the contracting employer's rules purporting to restrict that subcontract employee's right to distribute union literature among other employees of the subcontractor must satisfy the test of *Republic Aviation.* Our holding is narrow. We do not intend, as Coca–Cola and SSI apparently fear, to extend distribution rights to casual visitors on Coca–Cola's property, or to the host of other business invitees who enter there, such as firemen, policemen, auditors, and utility workers. The rule we announce applies to subcontract employees whose continuous and exclusive workplace is on Coca–Cola's premises, and affects only their right to distribute

---

**5.** While the Court continued to use the terms "employee" and "nonemployee" in its post-*Babcock & Wilcox* opinions, that word choice alone does not dictate that we respect the employment status rather than trespasser status of an organizer, because the principal cases interpreting *Babcock & Wilcox* do not concern nonemployees who were not also trespassers. *See, e.g., Hudgens,* 96 S.Ct. at 1031 (shop employees who were not employees of the mall seeking to restrict distribution); *Eastex,* 98 S.Ct. at 2509 (employees of the employer).

**6.** *See Montgomery Ward & Co. v. NLRB,* 692 F.2d 1115, 1126 & n. 12 (7th Cir.1982) (rejecting

argument that an employer may turn invitees into trespassers based "entirely upon the property owner's desire as an employer to prevent communications about labor organization" where the character of the organizing activity had no effect on the employer's managerial interests). *But see Eastex,* 98 S.Ct. at 2519–20 (Rehnquist, J., dissenting) (arguing that an invitee whose conduct exceeds the scope of the owner's license to enter becomes a trespasser and, therefore, that all invitees' organizational rights should be balanced against employers' property interests).

union literature to their fellow subcontract employees in nonworking areas during nonworking time.

### III. CONCLUSION

We find that the NLRB's application of the *Republic Aviation* standard to the facts of this case was reasonable, and therefore enforce the NLRB's order.

ENFORCED.