313 F.3d 585
 NEW YORK NEW YORK, LLC, d/b/a New York New York Hotel and Casino, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
Local Joint Executive Board of Las Vegas, Culinary Workers Union, Local 226 and Bartenders Union, Local 165, Intervenor.
 No. 01-1351.
 No. 01-1352.
 United States Court of Appeals, District of Columbia Circuit.
 Argued October 17, 2002.
 Decided December 24, 2002.
 
 On Petitions for Review and Cross-Applications for Enforcement of Orders of the National Labor Relations Board.
 Gary C. Moss argued the cause for petitioner. With him on the briefs was Celeste M. Wasielewski.
 Steven B. Goldstein, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Margaret A. Gaines, Supervisory Attorney.
 Michael T. Anderson and Richard G. McCracken were on the brief for intervenor.
 Before: EDWARDS, RANDOLPH, and TATEL, Circuit Judges.
 Opinion for the Court filed by Circuit Judge RANDOLPH.
 RANDOLPH, Circuit Judge:
 
 
 1
 The issue in these consolidated petitions for review of orders of the National Labor Relations Board is whether employees of contractors working on a casino's property have labor organizing rights equivalent to those possessed by the casino's employees. The Board seeks enforcement of its orders, and the union — Local Joint Executive Board of Las Vegas, Culinary Workers Union, Local 226 and Bartenders Union, Local 165 — has intervened in support of the Board. Our decision in ITT Industries, Inc. v. NLRB, 251 F.3d 995 (D.C.Cir.2001), controls the outcome.
 
 
 2
 New York New York Hotel and Casino is located on the Strip in Las Vegas, Nevada. NYNY has leased space in its hotel and casino complex to independent restaurant management companies to run food service facilities. One of the companies, Ark Las Vegas Restaurant Corporation, operates two restaurants and several fast food outlets in a food court on NYNY's premises.
 
 
 3
 NYNY permits Ark employees, when they are off-duty, to visit and patronize the casino and restaurants, and to enter the complex through NYNY's public entrances, but they may not wear their uniforms, and the bars are off limits at all times. NYNY presented evidence that it had a policy against solicitation of any sort on its premises.
 
 
 4
 Although NYNY has a collective bargaining agreement with the union, the agreement does not include Ark or its employees. In February 1997, the union launched a campaign to organize the Ark employees working on NYNY's property. The following events were part of that campaign. On July 9, 1997, three off-duty Ark employees stood on NYNY property outside the main entrance, distributing union handbills to customers entering and exiting the casino and hotel. The handbills stated that Ark paid its employees less than comparable unionized workers and urged the customers to tell Ark to sign a union contract. Shortly after the handbilling began, a NYNY security supervisor, joined by a member of NYNY's management, told the Ark employees that they were trespassing and that they were not allowed to distribute literature on NYNY's property. After the Ark employees protested that they had a right to be on the property and refused to leave, NYNY's security guards summoned local law enforcement officers, who issued trespass citations to the handbillers. The union then filed an unfair labor practice charge with the Board, alleging that NYNY had violated § 8(a)(1) of the National Labor Relations Act, in response to which the Board's regional director issued a complaint.
 
 
 5
 On April 7, 1998, four off-duty Ark employees entered NYNY and distributed handbills to customers inside the complex. Two of the handbillers stood outside America, one of the Ark-operated restaurants; the other two stood in front of Gonzales y Gonzales, another of Ark's restaurants. After they refused a request to stop handbilling, NYNY summoned the authorities, who issued trespass citations to three of the employees. Another incident occurred two days later, on April 9, 1998, when two off-duty Ark employees (one of whom had received a trespass citation for the handbilling on April 7) stood outside NYNY's main entrance again, distributing handbills to passing customers. After a sequence of events similar to those of July 9, 1997, these Ark employees also received trespass citations. (All of the trespass citations issued to the Ark employees in 1998 were dropped.) On April 20, 1998, the union filed unfair labor practice charges, alleging that NYNY had violated § 8(a)(1) of the Act; the regional director issued another complaint.
 
 
 6
 The Board's General Counsel argued in each case that under § 7 of the Act, 29 U.S.C. § 157, the Ark employees had a right to handbill at NYNY in non-work areas during non-work times and that NYNY therefore violated § 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), when it prevented them from engaging in protected activity. NYNY countered that because the employees worked for Ark, not NYNY, they had no § 7 rights against NYNY and that NYNY validly applied its restriction on activities on its premises.
 
 
 7
 In separate proceedings Administrative Law Judges found in favor of the Ark employees, holding that when employees of a contractor work regularly and exclusively on the owner's property, their § 7 rights are equivalent to those of the employer's own employees. New York New York Hotel LLC d/b/a New York New York Hotel & Casino, 28-CA-14519, 1998 WL 1985077 (June 29, 1998); New York New York Hotel LLC d/b/a New York New York Hotel & Casino, 28-CA-15148, 1999 WL 33452907 (Apr. 9, 1999). The Board affirmed in both cases, agreeing that the § 7 rights of the Ark employees were equivalent to those of NYNY's employees, and that in both cases the Ark employees were engaging in organization activities in non-work areas of NYNY's property. New York New York Hotel LLC d/b/a New York New York Hotel & Casino, 334 N.L.R.B. No. 87 (July 25, 2001); New York New York Hotel LLC d/b/a New York New York Hotel & Casino, 334 N.L.R.B. No. 89 (July 25, 2001).
 
 
 8
 Section 7 of the National Labor Relations Act guarantees employees "the right to self-organization, to form, join, or assist labor organizations." 29 U.S.C. § 157. Section 8(a)(1) enforces § 7, making it an "unfair labor practice" for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" § 7. 29 U.S.C. § 158(a)(1). In recognition of the property rights of employers and the § 7 rights of employees to organize, the Supreme Court has drawn a distinction between employees and nonemployees. In Republic Aviation Corp. v. NLRB, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), the Court sustained the Board's rulings that off-duty employees have § 7 rights to engage in organizing activities on their employer's premises in non-work areas — rights the employer may not infringe absent a showing that the ban is necessary to maintain workplace order and discipline. Id. at 803, 65 S.Ct. 982. On the other hand, the Court held in NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), that "an employer may validly post his property against nonemployee distribution of union literature" to employees, at least if the nonemployee union organizers may reach the employees through other means. Id. at 112, 76 S.Ct. 679. Highlighting the difference between the rights of employees and nonemployees, the Court explained in a later case that a "wholly different balance [is] struck when the organizational activity [is] carried on by employees already rightfully on the employer's property, since the employer's management interests rather than his property interests [are] there involved." Hudgens v. NLRB, 424 U.S. 507, 521-22 n. 10, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976).
 
 
 9
 This court's opinion in ITT Industries, Inc. v. NLRB, 251 F.3d 995, 1000-03 (D.C.Cir.2001), thoroughly analyzed these Supreme Court decisions and others. There, we explained that although there were suggestions in Supreme Court opinions that the controlling distinction for § 7 purposes was between invitees and trespassers, see Eastex, Inc. v. NLRB, 437 U.S. 556, 571, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978); Hudgens, 424 U.S. at 521-22, 96 S.Ct. 1029, the Court's most recent pronouncement in Lechmere, Inc. v. NLRB, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), reaffirmed the principle announced in Babcock & Wilcox that the National Labor Relations Act confers rights upon employees, not nonemployees, and that employers may restrict nonemployees' organizing activities on employer property. See ITT, 251 F.3d at 1002-03; see also United Food & Commercial Workers v. NLRB, 74 F.3d 292, 295 (D.C.Cir.1996).
 
 
 10
 The Supreme Court has never addressed the § 7 rights of employees of a contractor working on property under another employer's control, and the Board's New York New York decisions shed little light on the important issues this factual pattern raises. The Board provided no rationale to explain why, in areas within the NYNY complex but outside of Ark's leasehold, Ark's employees should enjoy the same § 7 rights as NYNY's employees. Instead, the Board relied upon two of its previous decisions, Southern Services, 300 N.L.R.B. 1154 (1990), and MBI Acquisition Corp. d/b/a Gayfers Dep't Store, 324 N.L.R.B. 1246 (1997). New York New York, 334 N.L.R.B. No. 87 at 1; New York New York, 334 N.L.R.B. No. 89 at 1 n. 3. While the Board is certainly entitled to invoke its precedents to justify a given result, the court's responsibility is to examine those precedents to make sure they supply the reasoning lacking in the Board's opinion under review. See ITT, 251 F.3d at 1004. Here, neither Southern nor Gayfers fills the gap, a point on which we are in agreement with the Fifth Circuit in NLRB v. Pneu Elec., Inc., 309 F.3d 843, 850-55 (5th Cir.2002), handed down after oral argument in this case. The Board decided Southern before the Supreme Court issued Lechmere; Gayfers came after the Court's opinion. Neither Board decision takes account of the principle reaffirmed in Lechmere that the scope of § 7 rights depends on one's status as an employee or nonemployee.
 
 
 11
 In Southern, the Board ruled that an employee of a janitorial subcontractor that serviced Coca-Cola's manufacturing site had the same § 7 rights as Coca-Cola's employees. Therefore, despite the company's no solicitation rule, the subcontractor's employee had a § 7 right to distribute leaflets to fellow janitorial employees in non-work areas of Coca-Cola's property after reporting to work but while she was off-duty. The Board interpreted the Supreme Court's opinions in Republic Aviation and Babcock & Wilcox as resting on a distinction between situations in which the union organizers were "properly on company property pursuant to the employment relationship" (Republic Aviation) and those in which they were "strangers to the employer's property" and "trespass[ed] to facilitate activity covered by" § 7 (Babcock & Wilcox). 300 N.L.R.B. at 1155. Because the subcontractor's employee "did not seek to `trespass' on Coke's property" and "was `already rightfully on [Coke's] property'" when she distributed union literature, the Board ruled that the case fell under Republic Aviation and that Coca-Cola thus violated her § 7 rights by preventing her from engaging in protected activity on company property. Southern, 300 N.L.R.B. at 1155.
 
 
 12
 The Eleventh Circuit enforced the Board's order. Southern Services, Inc. v. NLRB, 954 F.2d 700, 704 & n. 5 (11th Cir.1992). In ITT Industries we took note of the Eleventh Circuit's decision but viewed it as unpersuasive. Although the opinion issued a month after Lechmere, it did not mention the Supreme Court's decision, and it therefore did "not account for Lechmere's express reaffirmation of the employee/nonemployee distinction." ITT Industries, 251 F.3d at 1003.
 
 
 13
 The opinion of the court of appeals in Southern was contrary to Lechmere in other respects. The Eleventh Circuit stated:
 
 
 14
 Nor does the conduct of distributing union literature transform the status of a subcontract employee ... from that of a business invitee to that of a mere trespasser. Coca-Cola ... urge[s] this theory, but suggest[s] no principled barrier against the argument that a similar transformation occurs when the regular employee of an employer such as Coca-Cola engages in distribution activity.
 
 
 15
 Southern, 954 F.2d at 704. At this point the court dropped a footnote citing Montgomery Ward & Co. v. NLRB, 692 F.2d 1115, 1126 & n. 12 (7th Cir.1982). The quoted passage appears to bare some confusion about trespass. While the actions of the subcontractor's employee may not have fit within the ancient tort of trespass quare clausum fregit, her violation of the company's no solicitation rule nonetheless made her a trespasser. As the Restatement puts it, a "conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with." RESTATEMENT (SECOND) OF TORTS § 168 (1965). The union organizers in Lechmere were in a similar position. They were handing out leaflets in a shopping center parking lot jointly owned by Lechmere, which had a store in the center. No one doubted that the organizers were trespassers because they violated Lechmere's no solicitation policy. See 502 U.S. at 530, 540, 112 S.Ct. 841. The Southern court could find no principled reason why, if the subcontractor's employee were a trespasser, employees of Coca-Cola would not also be trespassers when they handed out union literature on company property. But that is the very point of Lechmere, as we explained in ITT Industries: the § 7 rights of employees entitle them to engage in organization activities on company premises. See 502 U.S. at 537, 112 S.Ct. 841. Nonemployees do not have comparable rights. Id. The Seventh Circuit case Southern cited — Montgomery Ward — is no longer good law. On its facts it was nearly identical to Lechmere, yet it held that nonemployees could enter a store and distribute union literature to employees in violation of the employer's rule against it-just the opposite of what the Supreme Court later held in Lechmere. See Montgomery Ward, 692 F.2d at 1126-27.
 
 
 16
 The other opinion cited by the Board in these cases — Gayfers — is also lacking. There, the Board considered the § 7 rights of employees of an electrical subcontractor temporarily hired by Gayfers to perform remodeling work at its shopping mall. Addressing the argument raised by Gayfers that the subcontractor's "employees were not employees of Gayfers and therefore [were] nonemployees within the meaning of Babcock & Wilcox and Lechmere," the Board once again equated "nonemployee" with "trespasser," and "employee" with "invitee," relying upon the Supreme Court's pre-Lechmere statement that "`the nonemployees in Babcock & Wilcox sought to trespass on the employer's property, whereas the employees in Republic Aviation did not.'" Gayfers, 324 N.L.R.B. at 1249 (quoting Eastex, 437 U.S. at 571, 98 S.Ct. 2505). The Board found that the subcontractor's employees "were not `strangers' to the Respondent's property, but rightfully on it pursuant to their employment relationship," and concluded that, as in Southern, the subcontractor's employees enjoyed § 7 rights "established by the standard of Republic Aviation and not ... Babcock & Wilcox and Lechmere." Gayfers, 324 N.L.R.B. at 1250.
 
 
 17
 The Board's decisions in Southern and Gayfers, and thus its decisions in these consolidated cases, purport to rest on the Board's interpretation of Supreme Court opinions. As such, the Board's judgment is not entitled to judicial deference. "We are not obligated to defer to an agency's interpretation of Supreme Court precedent under Chevron or any other principle." Univ. of Great Falls v. NLRB, 278 F.3d 1335, 1341 (D.C.Cir.2002) (quoting Akins v. Fed. Election Comm'n, 101 F.3d 731, 740 (D.C.Cir.1996) (en banc), vacated on other grounds, 524 U.S. 11, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998)). As our opinion in ITT Industries foreshadowed in its discussion of Southern, the critical question in a case of this sort is whether individuals working for a contractor on another's premises should be considered employees or nonemployees of the property owner. Our analysis of the Supreme Court's opinions, unlike the Board's in Southern and Gayfers, yields no definitive answer.
 
 
 18
 No Supreme Court case decides whether the term "employee" extends to the relationship between an employer and the employees of a contractor working on its property. No Supreme Court case decides whether a contractor's employees have rights equivalent to the property owner's employees — that is, Republic Aviation rights to engage in organizational activities in non-work areas during non-working time so long as they do not unduly disrupt the business of the property owner — because their work site, although on the premises of another employer, is their sole place of employment.
 
 
 19
 This leaves a number of questions in this case unanswered. Without more, does the fact that the Ark employees work on NYNY's premises give them Republic Aviation rights throughout all of the non-work areas of the hotel and casino? Or are the Ark employees invitees of some sort but with rights inferior to those of NYNY's employees? Or should they be considered the same as nonemployees when they distribute literature on NYNY's premises outside of Ark's leasehold? Does it matter that the Ark employees here had returned to NYNY after their shifts had ended and thus might be considered guests, as NYNY argues? Is it of any consequence that the Ark employees were communicating, not to other Ark employees, but to guests and customers of NYNY (and possibly customers of Ark)? Compare United Food & Commercial Workers, 74 F.3d at 298. (Derivative access rights, the Supreme Court has held, stem "entirely from on-site employees' § 7 organizational right to receive union-related information." ITT Industries, 251 F.3d at 997.)
 
 
 20
 It is up to the Board to answer these questions and others, not only by applying whatever principles it can derive from the Supreme Court's decisions, but also by considering the policy implications of any accommodation between the § 7 rights of Ark's employees and the rights of NYNY to control the use of its premises, and to manage its business and property. The Board did not perform that function in these cases. We will therefore grant the petitions for judicial review without reaching the other issues NYNY has presented, deny enforcement of the Board's orders, and remand to the Board for further proceedings.
 
 
 21
 
 So ordered.