KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring:
Although I readily join the majority opinion, I write separately to emphasize that, in my view, we are in no way retreating from the requirement that, in reaching a “proper accommodation” “between § 7 rights and private property rights,” Hudgens v. NLRB, 424 U.S. 507, 521, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) (internal quotation marks), the Board is “obliged to engage in considered analysis and explain its chosen interpretation,” “tak[ing] ... account of the [United States Supreme] Court’s different access decisions.” ITT Indus., Inc. v. NLRB, 251 F.3d 995, 1004 (D.C.Cir.2001). ‘When it is unclear under established law whether a category of workers enjoys ... access rights, then a court is obliged to defer to reasonable judgments of the Board in its resolution of cases that have not as yet been resolved by the Supreme Court.” Id. at 1003. In deciding where “[t]he locus of [a proper] accommodation ... may fall ... along the spectrum” of section 7 access rights, the Board must look to the “nature and strength of the respective § 7 rights and private property rights asserted in any given context." Hudgens, 424 U.S. at 522, 96 S.Ct. 1029 (emphasis added). I agree that the Board adequately considered the *198 relevant factors and reasonably explained why, under Supreme Court precedent and in the specific context of this case, the Ark employees fall nearer along the “spectrum” of section 7 access rights to New York New York’s own employees than to the “nonemployee union organizers” in NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), and Lechmere, Inc. v. NLRB, 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992).
The Supreme Court reaffirmed in Lech-mere the well-established principle “that the scope of § 7 rights depends on one’s status as an employee or nonemployee.” New York New York, LLC v. NLRB, 313 F.3d 585, 588 (D.C.Cir.2002) (NYNY 7). As we observed in NYNY I, however, “[n]o Supreme Court case decides whether a contractor’s employees have rights equivalent to the property owner’s employees ... because their work site, although on the premises of another employer, is their sole place of employment.” Id. at 590. Thus, we directed the Board to explain, inter alia, “whether individuals working for a contractor on another’s premises should be considered employees or nonemployees of the property owner” in determining their section 7 access rights to the owner’s property. Id.
On remand, the Board concluded that neither NYNY I nor the Supreme Court’s decisions required “an either/or choice for the Board, requiring [it] to treat the Ark employees either as equivalent to NYNY employees (and thus granting them full Republic Aviation access rights) or as equivalent to nonemployee union organizers (and so applying the much more restrictive access test of Lechmere).” New York New York, LLC, 356 NLRB No. 119, slip op. at 6 (Mar. 25, 2011) (Slip Op.). Consistent with our remand instructions, see NYNY I, 313 F.3d at 590,[1] the Board concluded that there existed “important distinctions, as a matter of both law and policy, between the Ark employees and the nonemployee union organizers involved in Lechmere.” Slip Op. at 6. Accordingly, the Board announced a new access standard pursuant to which a property owner may “exclude, from nonworking areas open to the public, the off-duty employees of a contractor who are regularly employed on the property in work integral to the owner’s business, who seek to engage in organizational handbilling directed at potential customers of the employer and the property owner” “only where the owner is able to demonstrate that their activity significantly interferes with his use of the property or where exclusion is justified by another legitimate business reason, including, but not limited to, the need to maintain production and discipline.” Id. at 13.
The Board explained that the Ark employees should not “be considered the same as nonemployees when they distribute literature on NYNY’s premises outside of Ark’s leasehold,” NYNY I, 313 F.3d at 590, because the Ark employees “were regularly employed on NYNY’s property” and “the hotel and casino complex was their workplace.” Slip. Op. at 8. Accordingly, “the Ark employees were not ‘outsiders’ ” to the property. Id. Furthermore, “the workplace is the ‘one place where employees clearly share common interests and where they traditionally seek to persuade fellow workers in matters af *199 fecting their union organizational life and other matters related to their status as employees.’” Id. at 8-9 (quoting Eastex, Inc. v. NLRB, 437 U.S. 556, 574, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978)).
Nevertheless, “the fact that the Ark employees work on NYNY’s premises,” NYNY I, 313 F.3d at 590, is not the only relevant fact that influenced the Board’s decision. See id. (“Without more, does the fact that the Ark employees work on NYNY’s premises give them Republic Aviation rights throughout all of the non-work areas of the hotel and casino?”). “In distributing handbills to support their own organizing efforts, Ark employees ... were exercising their own Section 7 rights.” Slip Op. at 8. This fact—that the Ark employees were exercising nonderivative section 7 rights—distinguishes the Ark employees from the nonemployee union organizers in Babcock & Wilcox and Lechmere “whose rights are derived from the right of employees to learn about the advantages of self-organization from others.” Id. As the Board explained, “[tjhis case involves the organizing activities of employees whose right to self-organization is statutorily guaranteed.” Id. (emphasis added). Moreover, “Ark employees!’] lack [of] an employment relationship with NYNY does not make their Section 7 rights in any way ‘derivative’ of the rights of other employees.” Id.
With respect to New York New York’s private property rights, the Board concluded that the absence of an employment relationship between the Ark employees and New York New York did not “justify a prophylactic rule limiting their access” to the hotel and casino because New York New York possessed the “ability to protect its operational and property interests in relation to [Ark’s] employees” by other means. Slip. Op. at 11. Specifically, there existed an “express contractual commitment on the part of Ark to use its employment authority to enforce NYNY’s rules and so protect against disruption of the hotel’s operations.” Id. In addition, “NYNY and Ark sharefd] an economic interest in ensuring that Ark employees do nothing that might interfere with the operations of the hotel.” Id.
Recognizing the fact-specific nature of its inquiry, the Board “le[ft] open the possibility that in some instances property owners will be able to demonstrate that they have a legitimate interest in imposing reasonable, nondiscriminatory, narrowly-tailored restrictions on the access of contractors’ off-duty employees, greater than those lawfully imposed on its own employees.” Slip Op. at 13. The Board noted, for example, that under its precedent, “an employer/owner could lawfully adopt a rule barring off-duty employees from returning to interior areas of its premises.” Id. at 13 n. 50. On the record before it, however, there was no evidence that New York New York maintained such a rule with respect either to its own off-duty employees or to off-duty Ark employees. Id[2]
Determinations regarding the proper accommodation of section 7 rights and private property interests, as the Board recognizes, “are best made on a case-by-case basis.” Slip Op. at 13. Given the Board’s findings—supported by substantial evidence—that the Ark employees were “eommunieat[ing] concerning their own terms and conditions of employment in and around their own workplace,” Slip Op. at 13 (emphases added), and that New York New York “could exercise control over the Ark employees [through] its relationship with the employees’ employer, Ark,” id. at *200 11, the Board’s accommodation in this case is “ ‘rational and consistent’ with the NLRA” as interpreted by the Supreme Court and is therefore entitled to be upheld. ITT Indus., Inc. v. NLRB, 413 F.3d 64, 76 (D.C.Cir.2005) (quoting NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 786, 110 S.Ct. 1542, 108 L.Ed.2d 801 (1990)).

. We directed the Board to consider specific questions and to decide the section 7 access rights Ark employees are entitled to "by applying whatever principles it can derive from the Supreme Court’s decisions ... [and] by considering the policy implications of any accommodation between the § 7 rights of Ark’s employees and the rights of NYNY to control the use of its premises, and to manage its business and property.” NYNY I, 313 F.3d at 590.

. As the Board noted, New York New York prohibited off-duty Ark employees from entering its bars. Slip Op. at 13 n. 50. The General Counsel did not challenge that prohibition.