# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 26, 2018          Decided June 1, 2018

No. 17-7073

RAYMOND MCGOVERN,
APPELLANT

v.

CHRISTOPHER BROWN, BADGE NO. 018, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITIES, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00215)

*Mara E. Verheyden-Hilliard* argued the cause for appellant. With her on the briefs was *Carl Messineo*.

*Nicholas S. McConnell* argued the cause for appellees. With him on the brief was *James N. Markels*.

Before: GRIFFITH, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion of the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*:  In the winter of 2011, Secretary of State Hillary Clinton delivered a speech at George Washington University.  A ticket was needed to attend the event.  Raymond McGovern was in the audience.  As Secretary Clinton began her speech, university police officers removed McGovern from the auditorium.  Three years later, McGovern brought this lawsuit against GW and these officers.  His complaint sounded in two counts: false arrest and excessive force.  The district court granted summary judgment in favor of the defendants.  *McGovern v. George Washington University*, 245 F. Supp. 3d 167 (D.D.C. 2017).

Secretary Clinton was well received when she took the stage at GW.  All stood, including McGovern, who had taken a seat near the middle of a row in the center of the auditorium.  McGovern removed his sport coat and shirt to reveal his undershirt with its message proclaiming "Veterans for Peace."  As the applause for Secretary Clinton subsided and the rest of the audience took their seats in anticipation of her speech, McGovern remained standing and turned his back to the stage, blocking the view of those sitting behind him, displaying his T-shirt message to the press at the back of auditorium.

Captain Glaubach, a plain-clothed GW special police officer who wore a badge attached to a neck lanyard, walked down the aisle and stood facing McGovern six to eight feet away.  Another GW police officer in uniform, Corporal Brown, slid down the row of seats toward McGovern, approaching him from the rear.  Brown put his hand on McGovern's right arm and asked him twice in a normal speaking voice, "Sir, would you please come with me?"

Cameras of CNN, PBS, C-SPAN, and the university newspaper, "The Hatchet," recorded this scene and much of what followed.  Despite the proximity of the officers to him,

McGovern continued to stand staring at the back of the auditorium, exhibiting no affect. He did not turn or react in any way to Corporal Brown's hand on his arm. He responded neither with word nor action to Corporal Brown's twice repeated request to come with him.

Corporal Brown then took McGovern by the arm. McGovern stumbled, but followed Corporal Brown onto the aisle where Captain Glaubach was standing. McGovern resisted the officers as they escorted him out of the auditorium. As he exited, he shouted "Who are you?" and "This is America! This is America!" Outside the auditorium (not recorded), the officers handcuffed McGovern and placed him under arrest. A third GW police officer – Officer Barton – took McGovern to a substation of the Metropolitan Police Department where he was processed for disorderly conduct in violation of D.C. Code § 22-1321(b).

McGovern's action for damages invoked 42 U.S.C. § 1983 and alleged that the officers and George Washington University violated his constitutional rights to freedom of speech and freedom from unreasonable seizures. An element of § 1983 is that the defendants acted under "color of any statute . . . of . . . the District of Columbia." The element was satisfied: the District of Columbia commissioned Captain Glaubach, Corporal Brown, and Officer Barton as special police officers, with the power to arrest those who violate the law. *See McGovern*, 245 F. Supp. 3d at 174, 180–82.

The district court, Chief Judge Howell, granted summary judgment in favor of the defendants. *McGovern*, 245 F. Supp. 3d at 171. As will appear, we find Chief Judge Howell's opinion comprehensive and persuasive.

In the district court, McGovern conceded that because George Washington University was a private institution, he did

not have a right to freedom of speech during this event. *Id.* at 191; *cf.* HENRY J. FRIENDLY, THE DARTMOUTH COLLEGE CASE AND THE PUBLIC-PRIVATE PENUMBRA (1968); Henry J. Friendly, *The Public-Private Penumbra—Fourteen Years Later*, 130 U. Pa. L. Rev. 1289 (1982). McGovern has limited this appeal to the questions whether officers Glaubach, Brown, and Barton had probable cause to arrest him and whether Glaubach and Brown used excessive force.

We begin with McGovern's false arrest claim. The constitutionality of an arrest turns on whether "at the moment the arrest was made, the officers had probable cause to make it . . .." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). It is enough that probable cause exists to arrest for *any* crime, not necessarily for the crime the officers had in mind at the time of the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). As we held in *United States v. Prandy-Binett*, 995 F.2d 1069, 1073–74 (D.C. Cir. 1993): "It is simply not the law that officers must be aware of the *specific* crime an individual is likely committing. . . . It is enough that they have probable cause to believe the defendant has committed one or the other of several offenses, even though they cannot be sure which one. The police may arrest an armed individual running from a store in the dead of night while the burglar alarm is sounding, even though they cannot be certain whether the suspected crime is attempted burglary, burglary, attempted robbery, robbery or unlawful possession of a firearm."

The special police officers argue that they had probable cause to arrest McGovern not only for disorderly conduct under D.C. Code § 22-1321, but also for unlawful entry, D.C. Code § 22-3302(a)(1), and assaulting a police officer, D.C. Code § 22-405(b). Because probable cause existed to arrest McGovern for unlawful entry, we follow the district court and discuss only why there was probable cause to arrest McGovern

for violating § 22-3302(a)(1).  *See McGovern*, 245 F. Supp. 3d at 185–87.

An individual may commit a violation of the District of Columbia's unlawful entry statute – a misdemeanor – in two ways: the individual may enter the property "against the will of the lawful occupant"; or the individual, "without lawful authority to remain therein or thereon," may "refuse to quit the [property] on the demand of the lawful occupant."  D.C. Code § 22-3302(a)(1); *District of Columbia v. Murphy*, 631 A.2d 34, 37 (D.C. 1993); *see also New York New York, LLC v. NLRB*, 313 F.3d 585, 589 (D.C. Cir. 2002).  The district court concluded that probable cause existed to arrest McGovern for violating this statute because the officers, by "express or implied means," made clear to McGovern that he was no longer welcome in the auditorium but McGovern refused to leave.  *McGovern*, 245 F. Supp. 3d at 185 (quoting *Ortberg v. United States*, 81 A.3d 303, 308 (D.C. 2013)).

McGovern objects to the "implied" portion of the district court's quotation of *Ortberg*.  As he sees it, "implied" notice suffices only when the case deals with a person's initial entry onto property.  For instance, a barbed wire fence on a stone wall around a meadow would "imply" do not enter, as would a sign on the fence saying "Trespassers W," broken off at the "W." *See* A.A. MILNE, WINNIE-THE-POOH ch. 3 (1926).  But McGovern says that when persons already on the property with permission act in a way inconsistent with the owner's conditional consent to their entry, the order for them to leave must be "express," not "implied."

We do not decide if McGovern is right about this.  Even on his terms, his argument fails.  It fails because the officers had probable cause to believe they had issued a sufficient demand for McGovern to leave and that he refused their demand.

McGovern "was acting in a manner different from every other person in the auditorium," and the officers had cause to believe he was disrupting the event. *McGovern*, 245 F. Supp. 3d at 187. The officers also had good reason to believe that McGovern knew of their presence and their apparent authority: they were close to him; one was wearing a badge, the other was in uniform. And they could reasonably believe that McGovern knew why they were confronting him – namely, to remove him from the auditorium. One of the officers placed his hand on McGovern's arm. The officer's statement, twice repeated, was framed in polite terms – "Sir, would you please come with me?" This did not render the statement ambiguous or any less demanding than if the officer had stated, "Get out of here." If McGovern had been prosecuted, perhaps he could have defended on the basis that the officers did not make a sufficient demand to trigger a violation of § 22-3302(a). But the question here is not whether McGovern violated that law. The question, which we have just answered, is whether the officers had probable cause to believe that he was violating the law.

Remaining is McGovern's claim of excessive force. He offers a fanciful description of what happened. Corporal Brown snuck up on him and, without identifying himself, yanked him along the row of seats to the aisle. McGovern tried to catch his balance, but Captain Glaubach joined Brown and "brutalized" him, "implement[ing] pain measures" and "contorting him into a painful headlock." Brief of Appellant at 53. As they neared the auditorium exit, the officers "intentionally/gratuitously rammed McGovern into a door." Brief of Appellant at 54.

McGovern's "version of events is so utterly discredited by the record that no reasonable jury could have believed him." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The video recording shows that Corporal Brown calmly approached McGovern, put his hand on McGovern's arm, and twice politely asked

McGovern to come with him. Only after McGovern ignored Brown did the officer hold McGovern's arm to force him to follow. McGovern briefly stumbled as he slid through the seats toward the aisle. At this point, McGovern began pushing the officers to evade their control. There was a bit of grappling until the officers gained control and placed him under arrest.

No one who watched the recording, and certainly no reasonable juror, could possibly credit McGovern's version of the events. Taking the facts "in the light depicted by the videotape," *id.* at 381, the use of force was "not so excessive that no reasonable officer could have believed in the lawfulness of his actions," *Scott v. District of Columbia*, 101 F.3d 748, 759 (D.C. Cir. 1996). This case is a far cry from those in which we have reversed summary judgment on excessive force claims. *Cf. Johnson v. District of Columbia*, 528 F.3d 969, 974–75 (D.C. Cir. 2008) (officer repeatedly kicked subdued subject in the groin); *Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 914–15 (D.C. Cir. 2015) (officer struck subject in the chest, fractured his ribs and caused permanent nerve damage).

*Affirmed.*