**F I L E D**

PUBLISH

**July 13, 2005**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DOUBLE EAGLE HOTEL & CASINO,

     Petitioner -
     Cross/Respondent,

    v.

NATIONAL LABOR RELATIONS
BOARD,

     Respondent -
     Cross/Petitioner.

No. 04-9520 & 04-9532

---

**On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board
(NLRB Nos. 27-CA-17816-2 and 27-CA-18048-1)**

---

Melvin B. Sabey, Kutak Rock, LLP, Denver, Colorado, appearing for Petitioner/Cross-Respondent.

Ruth E. Burdick, Attorney (Julie B. Broido, Supervisory Attorney; Arthur F. Rosenfeld, General Counsel; John E. Higgins, Jr., Deputy General Counsel; John H. Ferguson, Associate General Counsel; and Aileen A. Armstrong, Deputy Associate General Counsel, with her on the brief), National Labor Relations Board, Washington, DC, appearing for Respondent/Cross-Petitioner

---

Before **TACHA**, Chief Circuit Judge, **McWILLIAMS** and **HARTZ**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

Petitioner Double Eagle Hotel & Casino ("Double Eagle") seeks review of an order issued by Respondent National Labor Relations Board ("NLRB" or "Board"). Double Eagle argues that the Board erred in deciding that several rules maintained for its employees violate the National Labor Relations Act ("NLRA"), codified at 29 U.S.C. § 151 *et seq*. The NLRB cross-petitions for enforcement of its order. We have jurisdiction to review, modify, and enforce NLRB orders under §§ 10(e)–(f) of the NLRA. *See* 29 U.S.C. § 160(e)–(f). We deny Double Eagle's petition and, subject to the modification noted below, grant the NLRB's cross-petition for enforcement of its order.

## I. BACKGROUND

Double Eagle operates a hotel and casino in Cripple Creek, Colorado. In the casino, two types of employees interact with the customers playing slot machines: slot technicians and security officers. The slot technicians oversee the operation of the machines, including repairs, while the security officers are in charge of policing the slot area. Each type of employee receives tips from customers and are required by casino policy to share these tips. The manner for sharing tips between slot technicians and security officers is the foundation of the dispute leading to this proceeding.

Prior to May 21, 2001, all tips were pooled with half the tips going to slot technicians and the other half to security officers. Because the slot technicians outnumbered the security officers, a slot technician's share of the tip pool was smaller than a security officer's share. On May 21, in response to complaints from the slot

technicians, Double Eagle changed its tip-splitting policy. Under the new policy, tips were not first divided between the different groups of employees. Instead, each slot technician and security officer received an equal share of the total tip pool.

By October 2001, the relative number of slot technicians and security officers had shifted. Because the security officers now outnumbered the slot technicians, the slot technicians sought to revert to the original tip-splitting policy so that they could receive a larger share of the tips. This created friction between the two groups of employees, and as a result, Double Eagle management orally issued a rule prohibiting discussion of the tip-splitting policy. After a number of incidents in which the slot technicians expressed their dissatisfaction over the tip-splitting policy, including one in which a slot technician violated the tip rule, one technician was fired and two others were suspended. Alleging violations of the NLRA, the employees' union, International Brotherhood of Electrical Workers, Local No. 113, initiated administrative proceedings against Double Eagle.

Although the administrative law judge ("ALJ") found that Double Eagle committed numerous violations of the NLRA, we limit our discussion to the few issues that Double Eagle raises in its petition for review.[1] The ALJ held that the tips rule violated § 8(a)(1) of the NLRA.[2] As a result, the ALJ held that the employees who were

[1]In its reply brief, Double Eagle concedes that it has waived any objection to the other aspects of the NLRB's order.

[2]Section 7 of the NLRA guarantees employees the right to unionize. *See* 29 U.S.C. § 157 ("Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing . . .

disciplined for violating this rule had been unlawfully punished. The ALJ also ordered Double Eagle to cease and desist from maintaining a rule prohibiting discussion of the tip-splitting policy on the casino floor and to offer reinstatement and back pay to the disciplined employees. Double Eagle appealed this order and the Board affirmed on these issues. The Board further held that Double Eagle's "Customer Service," "Confidential Information," and "Communication" rules violated § 8(a)(1). Double Eagle timely petitions for review of the Board's decision and the NLRB cross-petitions for enforcement of the order.

## II. DISCUSSION

A.    Standard of Review

Section 10 of the NLRA, which grants this Court jurisdiction to consider Double Eagle's petition, requires that "the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." 29 U.S.C. § 160(e). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Accordingly, if supported by substantial evidence, we must affirm the Board's conclusions even though

.”). Section 8(a)(1) protects this right by prohibiting employers from "interfer[ing] with, restrain[ing], or coerc[ing] employees in the exercise of [their § 7] rights." 29 U.S.C. § 158(a)(1). Thus, an employer violates § 8(a)(1) of the NLRA by interfering with its employees' right to unionize.

we might reach a different result were we reviewing the record de novo." *Pub. Serv. Co. of Colo. v. N.L.R.B.*, 405 F.3d 1071, 1077 (10th Cir. 2005) (internal quotation marks omitted).

Although the NLRA does not expressly state a standard of review for the Board's legal determinations, our review is clearly established by existing case law. We give deference to the Board's interpretation of the NLRA. "For the Board to prevail, it need not show that its construction is the best way to read the statute; rather, courts must respect the Board's judgment so long as its reading is a reasonable one." *Four B Corp. v. N.L.R.B.*, 163 F.3d 1177, 1182 (10th Cir. 1998) (quotations and emphasis omitted). We review de novo any other legal determinations made by the Board "to determine whether the Board correctly interpreted and applied the law." *Id*. (quotations omitted).

B.    Customer Service Rule

We begin our review by discussing a rule maintained by Double Eagle entitled "Customer Service," as the analysis is relevant to our discussion of the tips rule. The customer service rule, contained in Double Eagle's employee handbook, states:

> Never discuss Company issues, other employees, and personal problems to or around our guests. Be aware that having a conversation in public areas with another employee will in all probability be overheard.

The Board held that this rule overly restricted the employees' ability to discuss work-related issues and therefore violated § 8(a)(1). Double Eagle petitions for review of this holding, arguing that the Board erred because it misinterpreted the scope of its rule.

The Board began its analysis of the customer service rule by recognizing that "[a] rule like the one at issue here, which prohibits employees from discussing working conditions, is viewed by the Board as analogous to a no-solicitation rule for purposes of considering its legality." *Double Eagle Hotel & Casino and Int'l Brotherhood of Electrical Workers, Local No. 113*, 341 N.L.R.B. No. 17 at 2 (Jan. 30, 2004). The right to solicit employees to join the union is guaranteed by § 7 because self-organization could not occur without the ability to solicit. The right to solicit, however, is not absolute. As the Ninth Circuit has recognized, "the right of employees to solicit or distribute materials must be balanced against an employer's right to maintain discipline in its establishment." *N.L.R.B. v. Silver Spur Casino*, 623 F.2d 571, 582 (9th Cir. 1980) (citing *Republic Aviation Corp. v. N.L.R.B.*, 324 U.S. 793, 797–98 (1945)).

In *Beth Israel Hospital v. N.L.R.B.*, 437 U.S. 483 (1978), the Supreme Court discussed how this balancing occurs in retail industries:

> In the retail marketing and restaurant industries, the primary purpose of the operation is to serve customers, and this is done on the selling floor of a store or in the dining area of a restaurant. Employee solicitation in these areas, if disruptive, necessarily would directly and substantially interfere with the employer's business. On the other hand, it would be an unusual store or restaurant which did not have stockrooms, kitchens, and other nonpublic areas, and in those areas employee solicitation of nonworking employees must be permitted.

*Id*. at 506. Based on this reasoning, the Ninth Circuit held in *Silver Spur* that a casino—which it found more akin to a retail than non-retail industry—could prohibit solicitation in its gambling area, restaurant, and bar. 623 F.2d at 583.

Upon determining that the customer service rule should be treated as a no-solicitation rule, the Board held that Double Eagle "lawfully could prohibit employees from soliciting each other and discussing their working conditions in the casino's gambling areas, and adjacent aisles and corridors frequented by customers, but it could not maintain a general ban on that activity beyond that area." 341 N.L.R.B. No. 17 at 2. Double Eagle does not dispute this interpretation of the NLRA.[3] Instead, it contends that its customer service rule complies with this requirement and that the Board erred in interpreting its rule more broadly.

The Board interpreted the customer service rule to "prohibit[] discussion in 'public areas.' Thus, for example, the rule would bar discussions in such public areas as parking lots and restrooms." *Id.* Because the prohibition on discussing employment-related issues was not limited to the gaming floor and adjacent corridors, the Board held that the rule was overly broad and therefore violated § 8(a)(1).

Double Eagle objects to the Board's interpretation of this rule because the rule does not state that employees cannot discuss company issues in "public areas." The term "public areas" appears only in the second sentence of the rule, and this second sentence does not prohibit any discussion—it merely cautions employees that guests will likely overhear any conversation held in public areas. The rule properly interpreted, Double

---

[3]Nonetheless, we have independently reviewed the Board's interpretation and find it reasonable in light of a number of Circuit Court decisions interpreting the NLRA similarly. *See, e.g., N.L.R.B. v. Silver Spur Casino*, 623 F.2d 571, 583 (9th Cir. 1980).

Eagle argues, does not prohibit all discussion of company issues in "public areas" because the employees can discuss issues when guests are not around.

Double Eagle's interpretation is more consistent with the text of the rule. Nonetheless, even under this interpretation, the rule violates § 8(a)(1). The rule's first sentence, which prohibits discussion of company issues, contains nothing to limit the scope of its application. Under this rule, the presence of a single guest can transform an area in which employees have a right to discuss work conditions, such as the parking lot or break room, into a place where discussion is prohibited. While existing case law permits a casino to limit employees' discussions on the gaming floor, *see, e.g.*, *Silver Spur*, 623 F.2d at 583, no court has interpreted the NLRA to permit an employer to adopt a no-discussion rule that follows each of its customers. We therefore hold that even accepting Double Eagle's interpretation of its customer service rule, the rule is unlawfully broad.

C.      Tips Rule

Double Eagle also argues that the Board erred in holding its unwritten rule prohibiting discussion of the tip-splitting policy violated § 8(a)(1). Double Eagle contends that its rule is lawful because it only prohibits discussion of the tip-splitting policy on the casino floor, not in other areas. The Board's opinion did not discuss the tips rule; instead, it simply adopted the reasoning given by the ALJ. *See* 341 N.L.R.B. No. 17 at 1 n.6 ("For the reasons set forth by the judge, we agree with the judge that the

Respondent's oral rule, proscribing the discussion of tips and its tip policy anywhere on the Respondent's property, is overly broad and unlawful."). We therefore look to the ALJ's decision to review this issue.

Double Eagle argued before the ALJ that the tips rule only prohibited discussion of the tip-splitting policy on the casino floor and that this rule was necessary to avoid disrupting its customers. The ALJ rejected these arguments. The judge found that the tips rule "was not limited to the gaming floor but was general—anytime, anywhere on company property." *Double Eagle Hotel & Casino and Int'l Brotherhood of Electrical Workers, Local No. 113*, Nos. 27-CA-17816-2 and 27-CA-18048-1, slip op. at 3 (N.L.R.B. Div. of Judges Mar. 3, 2003). Additionally, the judge held that "even if the rule was simply limited to the gaming floor" the rule would be unlawful. *Id.*

In arriving at this conclusion, the ALJ acknowledged that existing precedent permitted a casino to prohibit solicitation on the gaming floor. The judge, however, relied on cases recognizing "a distinction between 'talking' and 'solicitation.'" *Id.* (quoting *W.W. Granger, Inc.*, 229 N.L.R.B. 165 (1997)). Based on this distinction, the ALJ concluded that "prohibit[ing] employees from discussing matters pertaining to unionization while on duty, but allowing discussion of other matters, violates Section 8(a)(1)." *Id.* (citing *Teledyne Advanced Materials*, 332 N.L.R.B. No. 53 (2000)). Thus, the ALJ rejected analyzing the tips rule under the no-solicitation case law and held that Double Eagle could not prohibit discussion of the tip-splitting policy at all.

We disagree. The rule's legality must be considered in the context of no-solicitation, as opposed to no-discussion, precedent. To begin, we note that the customer service rule—the first rule discussed above—was properly treated by the Board as a no-solicitation rule because it "prohibit[ed] employees from discussing working conditions." 341 N.L.R.B. No. 17 at 2. The tips rule is identical in this respect—it prohibits employees from discussing a policy that directly affects their income. We also note that both parties rely on no-solicitation cases in addressing the rule.

Moreover, the no-discussion cases relied on by the ALJ arose in a non-retail context, whereas a casino is more appropriately considered a retail environment. *See Silver Spur*, 623 F.2d at 583. We think the distinction between the two contexts is important for the following reasons. As discussed above, when considering rules which restrict employees' § 7 rights, employees' right to self-organize must be balanced against the employer's right to operate its business. *See Republic Aviation Corp. v. N.L.R.B.*, 324 U.S. 793, 797–98 (1945). In work areas where no customers are present, the employees' productivity is of primary concern. Consequently, "an employer may implement rules against solicitation during work hours to prevent interference with work productivity." *Wal-Mart Stores, Inc. v. N.L.R.B.,* 400 F.3d 1093, 1099 (8th Cir. 2005).

When worker productivity is the primary concern, no-discussion rules should be distinguished from no-solicitation rules. *See id.* (quoting *W.W. Grainger, Inc.*, 229 N.L.R.B 161, 166 (1977)). Such a distinction is sensible because discussion of union

-10-

activities is often less disruptive than solicitation and therefore has a less significant impact on worker productivity. The Board's decisions also properly recognize that employees' discussions can adversely affect productivity and therefore may be limited. Indeed, an employer may adopt a no-discussion rule; however, the rule must apply to *all* topics, not simply those related to the job. *See Teledyne Advanced Materials*, 332 N.L.R.B. No. 53 at 1 ("It is well established that an employer violates Section 8(a)(1) when, as here, employees are forbidden to discuss unionization while working, but are free to discuss other subjects unrelated to work."). This rule prohibits an employer from discriminating against union discussions under the pretext of increasing worker productivity. If worker productivity is really the concern, then all non-work-related discussions should be prohibited because these topics all interfere with the employees' work equally.

In restaurants, bars, casinos, and other retail stores, however, the employer's interest is not limited to productivity, but also includes the treatment of its customers. *Cf. Beth Israel*, 437 U.S. at 506 ("In the retail marketing and restaurant industries, the primary purpose of the operation is to serve the customer."). As a result, "[e]mployee solicitation [on the selling floor of a store or in the dining area of a restaurant], if disruptive, necessarily would directly and substantially interfere with the employer's business." *Id*. Therefore, when the enjoyment of the customer is at issue—as it is in the retail and service context—there is less of a reason to treat solicitation and discussion

differently because both could prove equally disruptive to the customer.  Consequently, the Board's decisions treat no-discussion and no-solicitation rules identically in this context.  *See, e.g.*, *Aroostook County Regional Ophthalmology Ctr.*, 317 N.L.R.B. 218, 218 n.4 (1995) (treating a rule that prohibited discussion of grievances "within earshot of patients" as a no-solicitation rule).  Because the tips rule was adopted in a retail setting for the purpose of preventing discussion of working conditions around customers, we conclude that the tips rule must be considered under the same legal standard as the customer service rule.  Thus, contrary to the ALJ's conclusion, Double Eagle can maintain its tips rule so long as it is limited to the casino's gambling area, and adjacent aisles and corridors frequented by customers.

Double Eagle contends that the rule was so limited, and that it merely stated that employees could not discuss tip-splitting while on the casino floor.  The ALJ, however, found that the tips rule prohibited discussion of the tip-splitting policy anywhere on the premises.  Double Eagle therefore argues that the Board, by adopting the ALJ's decision, erred in finding that the rule extended beyond the casino floor and that it could not maintain its tips rule limited in this way.

Whether the tips rule applied only on the casino floor or more broadly is a question of fact.  We therefore review the record to determine whether the Board's finding is supported by substantial evidence.  *See* 29 U.S.C. § 160(e); *N.L.R.B. v. Interstate Builders, Inc.*, 351 F.3d 1020, 1027 (10th Cir. 2003).  No fewer than four employees

testified before the ALJ that the tips rule extended beyond the casino floor. *See* Tr. at 165 ("We were told that we couldn't discuss tips . . . on the floor, in the break room, locker room, anywhere.") (testimony of Carol Marthaler); *id*. at 95 (employees could not discuss the tip-splitting policy on "[t]he gaming floor, break room, [or] bathrooms.") (testimony of Betty Ingerling); *id*. at 187 ("You were not to talk about tips on the premises.") (testimony of Lowell Moses); *id*. at 193 ("We were not to discuss [the tip-splitting policy] on the floor, break room, out back in our smoking area, anyplace within the building.") (testimony of Larry Custer).

Although there was also testimony to the contrary, the substantial evidence standard of review does not permit us to question the Board's balancing of this conflicting evidence. *See Four B Corp.*, 163 F.3d at 1182. The Board's conclusion that the tips rule applied beyond the casino floor is supported by substantial evidence and therefore we accept this factual finding. Thus, because we interpret § 8(a)(1) to prohibit a no-solicitation rule of this breadth, we deny Double Eagle's petition on this issue.

Although we hold that the tips rule violated § 8(a)(1), we must exercise our authority to modify the Board's order. *See* 29 U.S.C. § 160(f) (granting courts of appeals jurisdiction to "enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board"). The order requires Double Eagle to "[c]ease and desist from [m]aintaining a rule prohibiting employees from discussing tips or the Respondent's tip policy on the casino floor." Yet the rule

announced by the Board with respect to the customer service rule also applies to the tips rule, and therefore "the Respondent lawfully [can] prohibit employees from . . . discussing their working conditions in the casino's gambling area, and adjacent aisles and corridors frequented by customers, but it [cannot] lawfully maintain a general ban on that activity beyond that area." We therefore modify the order so that it is consistent with the law. The order shall be modified to require Double Eagle to cease and desist from:

> Maintaining a rule prohibiting employees from discussing their working conditions outside of the casino's gambling area and adjacent aisles and corridors frequented by customers.

D.     Disciplinary Action Taken Against Employees

Three employees were disciplined for violating the tips rule. Because the Board determined that this rule violated § 8(a)(1), it held that these disciplinary actions were also unlawful. To remedy this violation, the Board ordered Double Eagle to offer reinstatement and back pay to these employees. Double Eagle objects to this part of the order, arguing that the employees were disciplined for conduct that it could lawfully proscribe: discussing the tip-splitting policy while on the casino floor.

Section 8(a)(3) of the NLRA prohibits employers from "discriminat[ing] in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). Under this provision, an employer is prohibited from disciplining an employee who has exercised rights protected by § 7.

Section 8(a)(3) violations arise when an employer has disciplined an employee for breaking a rule that the Board determines violates § 8(a)(1). In this case, the Board held that the discipline violated § 8(a)(3) because the employees were punished for violating the tips rule, which it held was unlawfully broad. An overbroad rule, by definition, encompasses both activity which can be lawfully proscribed and activity which cannot. Relying on its own precedent, a majority of the Board concluded that this distinction makes no difference. The Board held that "where discipline is imposed pursuant to an overbroad rule, that discipline is unlawful regardless of whether the conduct could have been prohibited by a lawful rule." 341 N.L.R.B. No. 17 at 1 n.3.

Chairman Battista wrote separately on this question, stating that he "would not find that *all* discipline imposed pursuant to an overbroad rule is necessarily unlawful." *Id*. at 6. Instead, the Chairman would determine whether a disciplinary action was unlawful on a case-by-case basis and the punishment would not violate § 8(a)(3) "where the record clearly establishes that the discipline imposed was for conduct that an employer lawfully can proscribe, and the employer makes clear to the employees that their discipline is for this conduct." *Id.*

Double Eagle argues that we should adopt Chairman Battista's position, and because it only punished employees who had discussed tips on the casino floor, the disciplinary actions did not violate § 8(a)(3). We first note that the ALJ's findings support Double Eagle's assertion that the disciplinary actions were taken based on

-15-

discussion of the tip-splitting policy on the casino floor. With respect to the discharged employee, Betty Ingerling, the ALJ found that "[t]here is no doubt from Respondent's admissions that absent Ingerling discussing the tip policy on the casino floor she would not have been discharged." *Double Eagle*, slip op. at 10. In discussing the suspended employees, Carol Marthaler and Barbara McCoy, the ALJ stated that "[t]he Respondent admits that Marthaler and McCoy were discharged because they talked on the gaming floor about [a tip issue in] violation of the Respondent's rule prohibiting such discussions." *Id.* Therefore, all three employees were disciplined for actions that they could have been disciplined for under a lawful tips rule.

Although we think Chairman Battista makes a strong argument, we adopt the view of the Board's majority. Our decision is based in large part on the amount of deference we are required to give to the Board's interpretation of the NLRA. Even if we think Chairman Battista presents the best reading of the statute, we must accept the majority's interpretation if it is a "reasonable one." *See Four B Corp.*, 163 F.3d at 1182 ("For the Board to prevail, it need not show that its construction is the best way to read the statute; rather, courts must respect the Board's judgment so long as its reading is a reasonable one.") (quotations and emphasis omitted).

We conclude that the Board's interpretation is reasonable. By adopting the rule that all disciplinary actions imposed pursuant to an unlawful rule are unlawful, the Board reduces the chilling effect that results from imposition of overbroad rules. The situation

under consideration is analogous to a constitutional overbreadth challenge. Under the overbreadth doctrine, a defendant convicted for acts that may be lawfully proscribed can nonetheless have his conviction overturned by arguing that the statute is unconstitutional because it is overbroad. Courts permit these overbreadth challenges because they facilitate the striking down of laws which have a chilling effect on persons whose actions may not be lawfully proscribed. As the Supreme Court explained in *Brockett v. Spokane Arcades, Inc.*:

> [A]n individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court—those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid.

472 U.S. 491, 503 (1985).

Similar interests are present here. The Board has previously recognized the need to protect employees from rules that have a chilling effect on the exercise of their rights. In *Lafayette Park Hotel*, the Board noted that "[w]here the rules are likely to have a chilling effect on Section 7 rights, the Board may conclude that their maintenance is an unfair labor practice, even absent evidence of enforcement." 326 N.L.R.B. 824, 825 (1998); *see also N.L.R.B. v. Vanguard Tours*, 981 F.2d 62, 67 (2d Cir. 1992) (holding that an overbroad rule was unlawful because of the "likely chilling effect of such a rule").

Therefore, we hold that a disciplinary action for violating an unlawful rule is itself a violation of the NLRA. Because we also hold that the tips rule violated § 8(a)(1),

-17-

Double Eagle's discipline of employees who violated the tips rule violates § 8(a)(3). We therefore deny Double Eagle's petition requesting modification of the order with respect to offering reinstatement and back pay to employees Ingerling, Marthaler, and McCoy.

E.     Confidentiality Rules

Double Eagle also petitions for review of the Board's determination that two of its rules restricting dissemination of confidential information violate § 8(a)(1). The Board held that Double Eagle's "Confidential Information" and "Communication" rules are unlawful because they restrict employees' right to discuss wages and other terms of employment. Double Eagle argues that the rules, properly interpreted, place no such limitation on its employees.

In its employee handbook, Double Eagle maintains a rule establishing its policy regarding confidential information. The rule states:

CONFIDENTIAL INFORMATION

Pursuant to Company policy . . . you may be required to deal with many types of information that are extremely confidential and with the utmost discretion must be observed. It is essential that no information of this kind is allowed to leave the department, other than by activity/job requirement, either by documents or verbally. A list, which is not all-inclusive, of the types of information considered confidential is shown below:

- disciplinary information
- grievance/complaint information
- performance evaluations
- salary information
- salary grade
- types of pay increases
- termination data for employees who have left the company

-18-

> Information should be provided to employees outside the department or those outside the Company only when a valid need to know can be shown to exist.

The casino's "Communication" rule incorporates this definition of confidential information and states that, without prior approval of management, an employee is not, "under any circumstances, permitted to communicate any confidential or sensitive information concerning the Company or any of its employees to any non-employee."

In *Lafayette Park Hotel*, the Board discussed how employer confidentiality rules should be balanced against employees' § 7 rights. The Board noted that "businesses have a substantial and legitimate interest in maintaining the confidentiality of private information, including guest information, trade secrets, contracts with suppliers, and a range of other proprietary information." 326 N.L.R.B. at 826. Because of this interest, the Board in *Lafayette Park Hotel* held that a rule preventing employees from divulging "hotel-private" information did not violate § 8(a)(1). *Id*. The employer's interest in confidentiality, however, is outweighed by employees' need to discuss their terms of employment, and thus "employers may not prohibit employees from discussing their own wages or attempting to determine what other employees are paid." *Id*. In addition, when a confidentiality provision is reasonably interpreted to prevent employees from discussing working conditions, the Board has held that rule is unlawful. *See, e.g.*, *IRIS, U.S.A., Inc.*, 336 N.L.R.B. 1013 (2001).

In reviewing orders from the NLRB, the D.C. Circuit has adopted this framework.

In *Aroostook County Ophthalmology Ctr.*, the court stated that "[t]here can be no quarrel with the claim that, under the NLRA, employees are generally free to discuss the terms and conditions of their employment." 81 F.3d 209, 212 (D.C. Cir. 1996).[4] Similarly, in *Brockton Hospital v. NLRB*, the court struck down a confidentiality rule because it limited employees' ability to discuss "wages, hours, and working conditions—the very stuff of collective bargaining." 294 F.3d 100, 107 (D.C. Cir. 2002).

We agree with the Board and the D.C. Circuit that a company has a significant interest in maintaining its confidential information, but that confidential information cannot be defined so broadly as to include working conditions. Under this holding, Double Eagle's definition of "confidential information" clearly violates § 8(a)(1) because it expressly includes "salary information[,] . . . salary grade[, and] . . . types of pay increases." Furthermore, because the "Communication" rule prohibits communicating "confidential information," employees could reasonably interpret it to prevent discussion of salary information, and therefore it is also unlawful.

Although Double Eagle has a significant interest in protecting its confidential information, its "Confidential Information" and "Communication" rules violate § 8(a)(1)

---

[4]Double Eagle cites *Aroostook County* to support its claim that its confidentiality rules do not violate § 8(a)(1). *Aroostook County*, however, is easily distinguishable. The confidentiality provision in that case involved patients' medical records. The D.C. Circuit permitted this confidentiality provision "because the rule in question in no way precludes employees from conferring with or seeking support from family and friends with respect to matters directly pertaining to the employees' terms and conditions of employment." *Aroostook County*, 81 F.3d at 212–13.

because they define confidential information too broadly. We note, however, that the Board's order only prohibits Double Eagle from maintaining confidentiality rules that "prohibit employees from discussing with nonemployees or among themselves wages, hours, and other terms and conditions of employment." 341 N.L.R.B. No. 17 at 2. As such, Double Eagle is free to modify its rules so that its interests are protected and the employees' § 7 rights are not violated.

### III. CONCLUSION

For the foregoing reasons, we deny Double Eagle's petition and grant the NLRB's cross-petition for enforcement, subject to the modification pertaining to the tips rule.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge