**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ENERGY WEST MINING
COMPANY,

Petitioner,

v.

DON C. JOHNSON;
BENEFITS REVIEW BOARD,

Respondents.

No. 06-9573
(No. 05-0477-BLA)
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McKAY**, and **GORSUCH**, Circuit Judges.

Petitioner Energy West Mining Co. ("Energy West") seeks review of a final

order of the Benefits Review Board ("Board") directing it to make black-lung

compensation payments to respondent Don C. Johnson. The Board's order was

predicated on the findings and conclusions of an administrative law judge

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

("ALJ") who held that Mr. Johnson was entitled to benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, because he was completely disabled by pneumoconiosis[1] contracted, at least in part, as a result of his coal mine employment. *See* 20 C.F.R. § 718.204. Energy West asserts that reversal is warranted because the Board improperly resolved conflicting evidence about the causes of Mr. Johnson's breathing difficulties – and that the true cause of Mr. Johnson's troubles was his longstanding smoking habit. Because we owe deference to the Board when its decision is supported by substantial, even if not uniform, evidence, we affirm.

\* \* \*

At the time of the hearing before the ALJ, Mr. Johnson was 79 years old and a retiree who suffered from chronic obstructive pulmonary disease ("COPD"). Prior to retirement, Mr. Johnson worked as an underground coal miner for some 44 years. Although the record contains conflicting reports given by Mr. Johnson to various doctors at various times regarding his smoking history, the ALJ credited Mr. Johnson's hearing testimony, supported by two physicians' reports, that he began smoking at age 19 and had "a substantial, prolonged history of

---

[1] Pneumoconiosis, otherwise known as black lung, is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201.

-2-

smoking of ½  to 1 pack per day for about 48 years ending in 1991, or a 24 to 48 pack year smoking history."  R. ALJ's decision at 16.

Upon review of the entirety of the medical evidence presented – reports by five physicians, two of whom were deposed, as well as treatment notes from various other medical sources – the ALJ determined that Mr. Johnson had established his COPD was the result of pneumoconiosis.  *See* 20 C.F.R. § 718.202(a)(4).  Applying the rebuttable presumption afforded Mr. Johnson by regulation, the ALJ further concluded that Mr. Johnson's pneumoconiosis arose at least in part from his coal-mine employment and not solely because of his smoking habit.  *See* 20 C.F.R. § 718.203(a), (b).  Finally, the ALJ held that Mr. Johnson's pneumoconiosis was itself a "substantially contributing cause" of his disability and thus that Mr. Johnson qualified under regulation for a finding of "total disability."  *See* 20 C.F.R. § 718.204(c)(1).

In working his way through these various steps, the ALJ accorded great weight to Dr. Jean-Maurice Poitras' opinion that Mr. Johnson suffered from pneumoconiosis and that the disease was caused by both coal dust and smoking. At the same time, the ALJ discounted the competing opinions of Drs. Robert J. Farney, David M. Rosenberg, and Jeff Elmer that Mr. Johnson's condition was caused solely by smoking.  The ALJ took this course because, in his view, these latter physicians failed to explain adequately why they ruled out coal-mine employment as a potential cause of Mr. Johnson's breathing troubles.

Along these same lines, the ALJ found that although Mr. Johnson's treating physician, Dr. David Nichols, was in a unique position to render an opinion, his opinion was equivocal and thus warranted less weight. As it happens, Dr. Nichols initially stated that he had no opinion as to the cause of Mr. Johnson's COPD because he was concerned only with treatment. Later, he opined that Mr. Johnson's condition resulted from a combination of smoking and coal-dust exposure. When informed of a normal spirometry study done at the time of Mr. Johnson's retirement and an inflated smoking history, Dr. Nichols finally stated that coal dust probably was not the cause, though he added that he could not rule out the possibility that Mr. Johnson's extensive coal-dust exposure played some role in his COPD.

Having found that Mr. Johnson satisfied all requirements for entitlement, the ALJ awarded benefits and the Board affirmed.

＊　＊　＊

On appeal to this court, Energy West argues: (i) the Board's decision to affirm the ALJ was in error because the ALJ improperly resolved the conflicting evidence of Mr. Johnson's smoking history; (ii) in making its determination that pneumoconiosis was a "substantially contributing cause" of Mr. Johnson's disability, the Board and ALJ likewise erred by failing to fully credit the opinions of Drs. Elmer, Farney, and Rosenberg, and improperly credited the opinion of

Dr. Poitras; and (iii) the Board and ALJ failed to consider all of the relevant medical evidence.

We review the Board's order only to determine whether it "correctly concluded that the ALJ's decision was supported by substantial evidence and not contrary to law," *N. Coal Co. v. Director, OWCP*, 100 F.3d 871, 873 (10th Cir. 1996); our review under this standard is "quite narrow," *Hall v. Dep't of Labor*, 476 F.3d 847, 850 (10th Cir. 2007) (quotation omitted). Substantial evidence need not be commanding or even the most convincing proof; indeed, we will not upset an administrative decision for lack of substantial evidence so long as the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The reasons for this deferential standard of review stem from the expertise of the agency charged with administering Congress's directives in the field and its unrivaled opportunity to assess the credibility of the witnesses; respecting these realities, we will "not sit as a super trial examiner," reweighing the evidence and comparative credibility of witnesses. *Ready Mixed Concrete Co. v. NLRB*, 81 F.3d 1546, 1551 (10th Cir. 1996) (quotation omitted).

Energy West first contends that the Board's reliance on the ALJ's assessment of Mr. Johnson's smoking history was in error because the record contains conflicting reports about how much Mr. Johnson smoked, and many such reports indicate a more serious history than that found by the ALJ. While the

ALJ determined that Mr. Johnson had smoked one-half to one pack of cigarettes per day for 48 years, Energy West points to statements Mr. Johnson made to Dr. Elmer and to other physicians that he smoked one and one-half packs per day or one to two packs per day, as well as statements equating to 100 pack years and 50 pack years. Energy West further charges the Board and the ALJ with failing to reconcile Mr. Johnson's erroneous statement to Dr. Elmer that he quit smoking in 1987 with other evidence that he quit in 1991.

But overlooked in all this is that the ALJ candidly acknowledged the discrepancies in the smoking-history records and credited Mr. Johnson's hearing testimony, as well as the medical histories given by Drs. Poitras and Farney, only after finding the competing evidence supplied by Energy West to be less convincing. It was within the ALJ's province to resolve the conflicting evidence regarding Mr. Johnson's smoking history, and we may not disturb the ALJ's credibility determinations, adopted by the Board, absent clear error; merely pointing to competing testimony inconsistent with the ALJ's finding neither satisfies this high standard nor negates the existence of the evidence on which the ALJ and Board relied. *See Double Eagle Hotel & Casino v. NLRB*, 414 F.3d 1249, 1256 (10th Cir. 2005) ("Although there was also testimony . . . contrary [to the Board's finding], the substantial evidence standard of review does not permit us to question the Board's balancing of this conflicting evidence."); *Hall*, 476 F.3d at 854 ("the possibility of drawing two inconsistent conclusions from the

evidence does not prevent the Board's findings from being supported by substantial evidence").

In a similar argument, Energy West maintains that the ALJ's characterization of Dr. Nichols' opinion as equivocal caused it to discount erroneously the seriousness of Mr. Johnson's smoking history. Energy West asserts that, notwithstanding his initial view that the disease was the result of a combination of smoking and coal-dust exposure, Dr. Nichols' ultimate opinion was that smoking caused Mr. Johnson's COPD. As discussed above, however, Dr. Nichols' opinion changed depending on the factors he was asked to consider and we thus are unable to say that the ALJ's conclusion that Dr. Nichols' opinion was equivocal was clearly erroneous, or that its presence in the record diminished the substantial evidence supporting the ALJ's findings.

Energy West also faults the Board and ALJ for crediting Dr. Poitras' opinion and discrediting what it believes to be the more reliable opinions of Drs. Elmer, Farney, and Rosenberg. But, again, as we have explained the comparative weight appropriately given conflicting evidence is not, at least absent extraordinary circumstances, an availing basis for appeal. *See supra* p. 5; *see also Hansen v. Director, OWCP*, 984 F.2d 364, 370 (10th Cir. 1993). In any event, Energy West's primary attack on Dr. Poitras – that he did not have the benefit of medical tests performed in September 2002 – appears to fail on its own terms. Energy West contends that Dr. Poitras' report was dated July 25, 2002;

-7-

yet, the record reflects that Dr. Poitras actually signed his report on September 25, 2002 – and that he did consider the September medical test results. R. Director's Ex. 15, at 3-4.[2] *Affirmed.*

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge

---

[2] Energy West's concern that the ALJ assumed erroneously that Dr. Elmer's diagnosis of chronic bronchitis was "legal pneumoconiosis" under 20 C.F.R. § 718.201(a)(2), is similarly misplaced because the ALJ did not appear to rely on Dr. Elmer's opinion.

In a final and brief aside, Energy West claims that the ALJ failed to consider the medical evidence of the CT scan, the treatment records from LDS Hospital, and the office notes from Dr. Dean. But Energy West has not explained to us why those records are relevant and in so doing has left us with no choice but to dismiss this argument for lack of sufficient development to allow for meaningful judicial review. *See Simpson v. T.D. Williamson Inc.*, 414 F.3d 1203, 1206 n.4 (10th Cir. 2005); *see also Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1184 (10th Cir. 2007) (Gorsuch, J., concurring) (adjudicating an issue that is not properly briefed "runs the risk of an improvident or ill-advised result given our dependence as an Article III court on the traditions of the adversarial process for sharpening, developing, and testing the issues for our decision").