# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 8, 2012          Decided April 17, 2012

No. 11-1098

NEW YORK-NEW YORK, LLC, DOING BUSINESS AS
NEW YORK-NEW YORK HOTEL AND CASINO,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, CULINARY
WORKERS UNION, LOCAL 226, AND BARTENDERS UNION,
LOCAL 165,
INTERVENOR

———

Consolidated with 11-1138

———

On Petition for Review
and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

———

*Gary C. Moss* argued the cause for petitioner. With him
on the briefs were *Paul T. Trimmer* and *Joel J. Borovsky*.

*Robin S. Conrad*, *Harold P. Coxson, Jr.*, and *Christopher C. Murray* were on the brief for *amicus curiae* Chamber of Commerce of the United States of America in support of petitioner.  *Bernard P. Jeweler* entered an appearance.

*Amy H. Ginn*, Attorney, National Labor Relations Board, argued the cause for respondent.  With her on the brief were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Ruth E. Burdick*, Supervisory Attorney.  *Heather S. Beard*, Attorney, entered an appearance.

*Richard G. McCracken* argued the cause for intervenor Local Joint Executive Board of Las Vegas, Culinary Workers Union, Local 226, and Bartenders Union, Local 165, in support of respondent.  With him on the brief was *Kristin L. Martin*.  *Eric B. Myers* entered an appearance.

Before: HENDERSON, ROGERS, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judges* HENDERSON and ROGERS join.

Concurring opinion filed by *Circuit Judge* HENDERSON.

KAVANAUGH, *Circuit Judge*:  Under precedents of the Supreme Court and the National Labor Relations Board, a property owner generally may not bar its *employees* from distributing union-related handbills on the property.  But a property owner generally may bar *non-employees* from doing so.  In this case, the primary question raised by New York-New York Hotel and Casino in Las Vegas is whether a property owner may bar *employees of an onsite contractor*

from distributing union-related handbills on the property. The problem for New York-New York is that this Court previously considered that question and held that the Board has discretion over how to answer it. On remand from this Court, the Board concluded that a property owner generally may not bar employees of an onsite contractor from distributing union-related handbills on the property. New York-New York asks us to overturn the Board's ruling. That would require us to overrule our prior panel decision, which determined that the Board has discretion on this issue. We are of course bound by our prior panel decision and must reject New York-New York's attempt to have us reopen it. New York-New York also raises a few separate points based on the particular facts of this case, but none suffices to overturn the Board's ruling. We therefore deny New York-New York's petition for review and grant the Board's cross-application for enforcement of its order.

I

New York-New York Hotel and Casino in Las Vegas contracts with Ark Las Vegas Restaurant Corporation, which operates restaurants in the New York-New York complex. On a few occasions in 1997 and 1998, off-duty Ark employees who worked at the Ark restaurants entered New York-New York's property and passed out union-related handbills to Ark and New York-New York customers. The handbilling took place on the sidewalk outside of the main entrance to New York-New York and in the hallways outside two of Ark's onsite restaurants. The handbills asked customers to urge Ark management to sign a union contract.

Eventually, New York-New York asked the handbilling Ark employees to leave its property. When the Ark

employees refused, New York-New York called the police, which cited most of the handbillers for trespassing.

The Union later filed unfair labor practice charges with the National Labor Relations Board, and the Board's regional director issued complaints against New York-New York. The complaints were premised on Section 7 of the National Labor Relations Act, which gives employees "the right to self-organization, to form, join, or assist labor organizations." 29 U.S.C. § 157. Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise" of their Section 7 rights. 29 U.S.C. § 158(a)(1). "Employee," as defined by the Act, includes "any employee, *and shall not be limited to the employees of a particular employer*." 29 U.S.C. § 152(3) (emphasis added).

Applying that statute, the Board found that New York-New York had committed an unfair labor practice by ejecting the handbillers from the property. The Board ruled that a property owner generally may not bar employees of an onsite contractor from distributing union-related handbills on the property. But this Court concluded that the Board had not adequately explained its reasoning. *See New York New York, LLC v. NLRB*, 313 F.3d 585, 588 (D.C. Cir. 2002). This Court thus remanded to the Board, emphasizing that the status of an onsite contractor's employees for these purposes was an issue committed primarily to the Board's discretion under the Act. *See id.* at 590. The panel listed a series of questions to guide the Board's exercise of its discretion on remand. *See id.*

On remand, the Board re-examined the issue and again concluded that a property owner generally may not bar employees of an onsite contractor from distributing

union-related handbills on the property. *See New York New York, LLC*, 356 N.L.R.B. No. 119, slip op. at 5, 12-13 (Mar. 25, 2011).[1] The Board therefore reaffirmed its finding that New York-New York committed an unfair labor practice. *See id.* at 14. New York-New York has again petitioned for review, and the Board has cross-applied for enforcement of its order.

II

New York-New York principally contends that an onsite contractor's employees must be treated as equivalent to non-employees rather than employees for purposes of the right to distribute union-related handbills on the owner's property. According to New York-New York, a property owner therefore generally may bar employees of an onsite contractor from distributing union-related handbills on the owner's property. But New York-New York advanced this same argument in the prior iteration of its case, and the prior panel rejected the argument. This Court said:

> [T]he critical question in a case of this sort is whether individuals working for a contractor on another's premises should be considered employees or nonemployees of the property owner. Our analysis of the Supreme Court's opinions . . . yields no definitive answer.
>
> No Supreme Court case decides whether the term "employee" extends to the relationship between an employer and the employees of a contractor working on

---

[1] To be clear, in order to be protected by this rule, the employees of the onsite contractor must be employees who work on site.

its property. No Supreme Court case decides whether a contractor's employees have rights equivalent to the property owner's employees – that is, *Republic Aviation* rights to engage in organizational activities in non-work areas during non-working time so long as they do not unduly disrupt the business of the property owner – because their work site, although on the premises of another employer, is their sole place of employment.

This leaves a number of questions in this case unanswered. . . .

It is up to the Board to answer these questions and others, not only by applying whatever principles it can derive from the Supreme Court's decisions, but also by considering the policy implications of any accommodation between the § 7 rights of Ark's employees and the rights of NYNY to control the use of its premises, and to manage its business and property.

*New York New York, LLC v. NLRB*, 313 F.3d 585, 590 (D.C. Cir. 2002).

In short, this Court determined that the governing statute and Supreme Court precedent grant the Board discretion over how to treat employees of onsite contractors for these purposes. On remand, the Board exercised its discretion within the limits this Court had set forth.[2] New York-New

---

[2] To the extent New York-New York accepts that the Board had discretion to consider "individuals working for a contractor on another's premises" as employees, *id.* at 590, but argues that the Board abused its discretion in reaching its decision, we reject that argument. We conclude that the Board in this case adequately considered and weighed the respective interests based on the

York's beef is really with this Court's prior panel decision. New York-New York may of course seek en banc review to have our precedent overruled. But as a three-judge panel, we are bound by that prior decision. We cannot overturn the Board's decision here on a ground necessarily rejected by the prior panel.

III

New York-New York raises a few other arguments based on the particular facts of this case. None is persuasive.

New York-New York complains that the handbilling activities at issue here were aimed at customers instead of just at fellow employees. However, "neither this court nor the Board has ever drawn a substantive distinction between solicitation of fellow employees and solicitation of nonemployees. To the contrary, both we and the Board have made clear that NLRA sections 7 and 8(a)(1) protect employee rights to seek support from nonemployees." *Stanford Hospital & Clinics v. NLRB*, 325 F.3d 334, 343 (D.C. Cir. 2003).

New York-New York also asserts that the handbilling here occurred not in non-working areas but rather in working areas, where the Board has said that handbilling may be banned. The Board has special rules to determine what constitutes a working area for each industry. *See Double Eagle Hotel & Casino*, 341 N.L.R.B. 112, 113 (2004), *enforced in relevant part*, 414 F.3d 1249, 1254 & n.3 (10th

principles from the Supreme Court's decisions and "the policy implications of any accommodation between the § 7 rights of Ark's employees and the rights of NYNY to control the use of its premises, and to manage its business and property." *Id.*

Cir. 2005). In a retail store, for example, the working area is the selling floor where the employer makes retail sales, but not the other public spaces. *See id.* For a hotel-casino such as New York-New York, the Board has long concluded that the working areas are the hotel rooms and gaming areas because a hotel-casino's main function is to "lodge people and permit them to gamble." *Santa Fe Hotel, Inc.*, 331 N.L.R.B. 723, 723, 729-30 (2000); *see also Double Eagle Hotel & Casino*, 341 N.L.R.B. at 113; *Dunes Hotel & Country Club*, 284 N.L.R.B. 871, 876-78 (1987). The Board found that the handbilling here did not occur in those areas. In light of Board precedent and the deference we owe to the Board on a question of this kind, we find no basis to overturn the Board's determination on this point.

New York-New York also says it acted lawfully because it relied on safety concerns to bar handbilling by the Ark employees. But the sidewalk and hallways in which the handbilling occurred were at least 18 feet wide. The Board found that the handbilling did not interfere with passing pedestrians and did not pose any safety issues. That finding is reasonable and supported by substantial evidence.

We have considered all of New York-New York's arguments and find them without merit.

\* \* \*

We deny New York-New York's petition for review and grant the Board's cross-application for enforcement.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring:

Although I readily join the majority opinion, I write separately to emphasize that, in my view, we are in no way retreating from the requirement that, in reaching a "proper accommodation" "between § 7 rights and private property rights," *Hudgens v. NLRB*, 424 U.S. 507, 521 (1976) (internal quotation marks), the Board is "obliged to engage in considered analysis and explain its chosen interpretation," "tak[ing] . . . account of the [United States Supreme] Court's different access decisions." *ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 1004 (D.C. Cir. 2001). "When it is unclear under established law whether a category of workers enjoys . . . access rights, then a court is obliged to defer to *reasonable* judgments of the Board in its resolution of cases that have not as yet been resolved by the Supreme Court." *Id.* at 1003. In deciding where "[t]he locus of [a proper] accommodation . . . may fall . . . along the spectrum" of section 7 access rights, the Board must look to the "nature and strength of the respective § 7 rights and private property rights asserted *in any given context*." *Hudgens*, 424 U.S. at 522 (emphasis added). I agree that the Board adequately considered the relevant factors and reasonably explained why, under Supreme Court precedent and in the specific context of this case, the Ark employees fall nearer along the "spectrum" of section 7 access rights to New York New York's own employees than to the "nonemployee union organizers" in *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105 (1956), and *Lechmere, Inc. v. NLRB,* 502 U.S. 527 (1992).

The Supreme Court reaffirmed in *Lechmere* the well-established principle "that the scope of § 7 rights depends on one's status as an employee or nonemployee." *New York New York, LLC v. NLRB*, 313 F.3d 585, 588 (D.C. Cir. 2002) (*NYNY I*). As we observed in *NYNY I*, however, "[n]o Supreme Court case decides whether a contractor's employees have rights equivalent to the property owner's employees . . . because their work site, although on the

premises of another employer, is their sole place of employment." *Id.* at 590. Thus, we directed the Board to explain, *inter alia*, "whether individuals working for a contractor on another's premises should be considered employees or nonemployees of the property owner" in determining their section 7 access rights to the owner's property. *Id.*

On remand, the Board concluded that neither *NYNY I* nor the Supreme Court's decisions required "an either/or choice for the Board, requiring [it] to treat the Ark employees either as equivalent to NYNY employees (and thus granting them full *Republic Aviation* access rights) or as equivalent to nonemployee union organizers (and so applying the much more restrictive access test of *Lechmere*)." *New York New York, LLC*, 356 N.L.R.B. No. 119, slip op. at 6 (Mar. 25, 2011) (Slip Op.). Consistent with our remand instructions, *see NYNY I*, 313 F.3d at 590,[1] the Board concluded that there existed "important distinctions, as a matter of both law and policy, between the Ark employees and the nonemployee union organizers involved in *Lechmere*." Slip Op. at 6. Accordingly, the Board announced a new access standard pursuant to which a property owner may "exclude, from nonworking areas open to the public, the off-duty employees of a contractor who are regularly employed on the property in work integral to the owner's business, who seek to engage in organizational handbilling directed at potential customers of the employer and the property owner" "only where the owner

---

[1] We directed the Board to consider specific questions and to decide the section 7 access rights Ark employees are entitled to "by applying whatever principles it can derive from the Supreme Court's decisions . . . [and] by considering the policy implications of any accommodation between the § 7 rights of Ark's employees and the rights of NYNY to control the use of its premises, and to manage its business and property." *NYNY I*, 313 F.3d at 590.

is able to demonstrate that their activity significantly interferes with his use of the property or where exclusion is justified by another legitimate business reason, including, but not limited to, the need to maintain production and discipline." *Id*. at 13.

The Board explained that the Ark employees should not "be considered the same as nonemployees when they distribute literature on NYNY's premises outside of Ark's leasehold," *NYNY I*, 313 F.3d at 590, because the Ark employees "were regularly employed on NYNY's property" and "the hotel and casino complex was their workplace." Slip. Op. at 8. Accordingly, "the Ark employees were not 'outsiders' " to the property. *Id*. Furthermore, "the workplace is the 'one place where employees clearly share common interests and where they traditionally seek to persuade fellow workers in matters affecting their union organizational life and other matters related to their status as employees.' " *Id*. at 8-9 (quoting *Eastex, Inc. v. NLRB*, 437 U.S. 556, 574 (1978)).

Nevertheless, "the fact that the Ark employees work on NYNY's premises," *NYNY I*, 313 F.3d at 590, is not the only relevant fact that influenced the Board's decision. *See id*. ("Without more, does the fact that the Ark employees work on NYNY's premises give them *Republic Aviation* rights throughout all of the non-work areas of the hotel and casino?"). "In distributing handbills to support their own organizing efforts, Ark employees . . . were exercising their own Section 7 rights." Slip Op. at 8. This fact—that the Ark employees were exercising nonderivative section 7 rights— distinguishes the Ark employees from the nonemployee union organizers in *Babcock & Wilcox* and *Lechmere* "whose rights are derived from the right of employees to learn about the advantages of self-organization from others." *Id*. As the Board explained, "*[t]his case* involves the organizing

4

activities of employees whose right to self-organization is statutorily guaranteed." *Id*. (emphasis added). Moreover, "Ark employees['] lack [of] an employment relationship with NYNY does not make their Section 7 rights in any way 'derivative' of the rights of other employees." *Id*.

With respect to New York New York's private property rights, the Board concluded that that the absence of an employment relationship between the Ark employees and New York New York did not "justify a prophylactic rule limiting their access" to the hotel and casino because New York New York possessed the "ability to protect its operational and property interests in relation to [Ark's] employees" by other means. Slip. Op. at 11. Specifically, there existed an "express contractual commitment on the part of Ark to use its employment authority to enforce NYNY's rules and so protect against disruption of the hotel's operations." *Id*. In addition, "NYNY and Ark share[d] an economic interest in ensuring that Ark employees do nothing that might interfere with the operations of the hotel." *Id*.

Recognizing the fact-specific nature of its inquiry, the Board "le[ft] open the possibility that in some instances property owners will be able to demonstrate that they have a legitimate interest in imposing reasonable, nondiscriminatory, narrowly-tailored restrictions on the access of contractors' off-duty employees, greater than those lawfully imposed on its own employees." Slip Op. at 13. The Board noted, for example, that under its precedent, "an employer/owner could lawfully adopt a rule barring off-duty employees from returning to interior areas of its premises." *Id*. at 13 n.50. On the record before it, however, there was no evidence that New York New York maintained such a rule with respect either to

its own off-duty employees or to off-duty Ark employees. *Id*.[2]

Determinations regarding the proper accommodation of section 7 rights and private property interests, as the Board recognizes, "are best made on a case-by-case basis." Slip Op. at 13. Given the Board's findings—supported by substantial evidence—that the Ark employees were "communicat[ing] concerning their *own* terms and conditions of employment in and around their *own* workplace," Slip Op. at 13 (emphases added), and that New York New York "could exercise control over the Ark employees [through] its relationship with the employees' employer, Ark," *id.* at 11, the Board's accommodation in this case is " 'rational and consistent' with the NLRA" as interpreted by the Supreme Court and is therefore entitled to be upheld. *ITT Indus., Inc. v. NLRB*, 413 F.3d 64, 76 (D.C. Cir. 2005) (quoting *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 786 (1990)).

---

[2]  As the Board noted, New York New York prohibited off-duty Ark employees from entering its bars. Slip Op. at 13 n.50. The General Counsel did not challenge that prohibition.